J-S34018-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.S.,A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 321 WDA 2024 |

Appeal from the Order Entered March 6, 2024
In the Court of Common Pleas of Indiana County Orphans' Court at
No(s): No. 32-23-0145

| | | |
|---|---|---|
| IN THE INTEREST OF: S.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 322 WDA 2024 |

Appeal from the Order Entered March 6, 2024
In the Court of Common Pleas of Indiana County Orphans' Court at
No(s): No. 32-23-0147

| | | |
|---|---|---|
| IN THE INTEREST OF: C.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 323 WDA 2024 |

Appeal from the Order Entered March 6, 2024
In the Court of Common Pleas of Indiana County Orphans' Court at
No(s): 32-23-0146

J-S34018-24

BEFORE: DUBOW, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:          **FILED: November 19, 2024**

S.B. ("Mother") appeals from the decrees involuntarily terminating her parental rights to her biological daughters, S.S. (born in April 2017), S.B. (born in December 2006), and C.B. (born in December 2009) (collectively, the "Children").[1] In addition, Mother's court-appointed counsel, Allen J. Fiechuk, Esquire ("Counsel"), has filed a motion to withdraw and accompanying brief, pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). After careful review, we grant Counsel's motion to withdraw and affirm the termination decrees.

We summarize the following factual and procedural history of this case from the certified record. Indiana County Children and Youth Services ("CYS") has an extensive history of involvement with this family. **See** N.T., 2/27/24, at 34-36. Relevant to the case *sub judice,* in March 2018, CYS became involved when there was a fire at the family's home. **See id**. at 36. CYS learned that the Children had been left home alone for an undisclosed, *albeit* significant, amount of time and had to be evacuated from a second-story

_____

[*] Former Justice specially assigned to the Superior Court.
[1] On the same date, by separate decrees, the orphans' court also terminated the parental rights of L.B., the biological father of S.B. and C.B. In addition, by separate decree, the court terminated the parental rights of J.S., the biological father of S.S. L.B. did not appeal his termination decrees. However, J.S. filed a notice of appeal in relation to the decree regarding S.S., which we dispose of by separate memorandum at docket number 393 WDA 2024.

- 2 -

window. *See id*. Shortly before the house fire, CYS had conducted an intake of the family which revealed various concerns regarding Mother's substance abuse, mental health, and her lack of supervision of the Children. *See id*.

Accordingly, CYS initiated a safety plan, and the Children were placed with their neighbor, C.K., who ultimately filed for and was awarded custody of the Children. *See id*. at 35-37. Thereafter, the Children resided with C.K. until June 2021, when she informed CYS that she would no longer care for them.[2] *See id*. at 37. C.K. signed a voluntary placement agreement that placed the Children in CYS's custody in June 2021. *See id*.

In July 2021, following a hearing, the orphans' court adjudicated the Children dependent. *See* Adjudication Order, 7/8/21. The court established the Children's permanency goals as reunification with Mother, with concurrent goals of adoption. *See id*. Mother remained an unsuitable placement option because of concerns regarding her mental health and substance abuse, suitability of housing, and lack of contact with the Children while they were in C.K.'s care. *See* N.T., 2/27/24, at 37-38. The court further determined that C.K. no longer desired to be a resource for the Children. *See* Adjudication Order, 7/8/21.

---

[2] As best we can discern from the certified record, C.K. reported that she could no longer manage the Children who were then displaying various behavioral issues. *See* Adjudication Order, 7/8/21.

In furtherance of reunification, the orphans' court ordered Mother to (1) participate in mental health treatment and engage any follow-up recommendations; (2) complete a parenting course; (3) maintain stable housing; (4) cooperate with service providers, (5) and attend visitation with the Children. *See* N.T., 2/27/24, at 38. Initially, Mother self-reported that she was clean of drugs and alcohol, and her drug screen results were negative. *See id*. at 39. However, in January 2023, Mother refused to be screened after she admitted to using prescription medications that had not been prescribed to her. *See id*. Consequently, the court then ordered her to participate in drug and alcohol treatment. *See id*.

According to CYS caseworker, Tori Hanig, Mother participated in individual therapy and medication management until November 2022, when she stopped signing releases. *See id*. Ms. Hanig reported that, after the court ordered Mother to engage in drug and alcohol treatment, she refused to submit to any further drug screens. *See id*. Mother similarly declined to attend any further drug and alcohol treatment. *See id*. Ms. Hanig also stated that Mother began a parenting course, but she never provided CYS with confirmation that she completed the service. *See id.* at 40.

Regarding visitation, Ms. Hanig stated that Mother has not seen S.B. since April 2023 and only attended seven of 136 visits. *See id*. at 41. Mother attended thirty-four out of 136 visits with C.B. and stopped availing herself of

visits in March 2023. *See id*. at 42. Finally, Mother last visited with S.S. in November 2022, and only attended thirty-six of 136 visits. *See id*. at 44.

On February 27, 2023, CYS filed petitions for the involuntary termination of Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act. The court appointed the Children's guardian *ad litem* ("GAL") from their respective dependency cases to fulfill the same role in the termination proceedings. Further, in compliance with section 2313(a), the court also appointed Joelyssa M. Johnson, Esquire, as legal interest counsel for the Children. *See generally In re Adoption of K.M.G.*, 240 A.3d 1218, 1234-36 (Pa. 2020).

The orphans' court conducted an evidentiary hearing on February 27, 2024, at which time the Children were ages six, fourteen, and seventeen, respectively. CYS presented the testimony of Carolyn J. Menta, Psy.D., a clinical psychologist; and Ms. Hanig. Mother did not appear or testify, but she was represented by Counsel.[3]

On March 6, 2024, the orphans' court filed decrees that involuntarily terminated Mother's parental rights to the Children along with accompanying

---

[3] The hearing was originally scheduled for September 27, 2023, however, the court continued the matter to February 27, 2024, to allow Mother the opportunity to attend the hearing. *See* N.T., 2/27/24, at 5-6. Counsel for CYS, William J. Carmella, Esquire, reported that CYS arranged transportation for Mother, but she still failed to appear. *See id*. 6-7.

opinions explaining its rationale pursuant to section 2511(a)(8) and (b).[4]

Mother filed timely notices of appeal, and, in lieu of filing Rule 1925(b) concise

statements, Counsel filed statements indicating his intent to file an **Anders**

brief and a motion to withdraw. **See** Pa.R.A.P. 1925(c)(4); **see also Interest**

**of J.T.**, 983 A.2d 771 (Pa. Super. 2009) (determining that **Anders** procedure

set forth in Rule 1925(c)(4) is proper in termination of parental rights case).

This Court consolidated Mother's appeals *sua sponte*. In this Court, Counsel

has filed an **Anders** brief and a motion to withdraw in relation to the

consolidated appeal. In lieu of authoring Rule 1925(a) opinions, the orphans'

court filed letters referring this Court to the March 6, 2024 opinions that

accompanied the termination decrees.

When faced with an **Anders** brief, this Court may not review the merits

of any possible underlying issues without first examining counsel's request to

withdraw. **See In re X.J.**, 105 A.3d 1, 3 (Pa. Super. 2014). As this Court

has explained, in order to withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after
> making a conscientious examination of the record, counsel has
> determined that the appeal would be frivolous; 2) furnish a copy
> of the [**Anders**] brief to the [appellant]; and 3) advise the

---

[4] The orphans' court failed to provide any analysis regarding section 2511(a)(1), (2), or (5). Although this Court need only agree with the orphans' court's determination as to any one subsection of section 2511(a), in addition to section 2511(b), in order to affirm termination, to enhance appellate review, we emphasize the importance of orphans' courts analyzing each subsection of section 2511(a) that it relies upon when making its determination. **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

[appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

With respect to the third requirement of **Anders**, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."

*In re J.D.H.*, 171 A.3d 903, 907 (Pa. Super. 2017) (citations and quotation marks omitted).

Additionally, counsel must file a brief that meets the following requirements established by the Pennsylvania Supreme Court in **Santiago**:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*X.J.*, 105 A.3d at 3-4 (citation omitted).

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Id*. at 4 (citations omitted). Our independent review is not limited to the issue(s) discussed by counsel, but extends to "additional, non-frivolous issues" that may have been overlooked by counsel. *J.D.H.*, 171 A.3d at 908 (citation omitted). An appeal is frivolous when it ""lacks any basis in law or fact." **Santiago**, 978 A.2d at 356 (citation omitted).

In this matter, Counsel filed a motion to withdraw certifying his conscientious review of the cases and his determination that Mother's appeals are frivolous. Counsel also filed an **Anders** brief which included a summary of the procedural history and facts of the case with citations to the record, discussion of the issues that could arguably support Mother's appeal, and counsel's assessment explaining his belief that Mother's appellate claims are frivolous with citations to relevant legal authority. Finally, Counsel attached to his petition the letter that he sent to Mother which advised her of her rights to: (1) retain new counsel to pursue the appeals; (2) proceed *pro se* on the appeals; and (3) raise any additional points that Mother deems worthy of this Court's attention. As Counsel has met the technical requirements of **Anders** and **Santiago**, we will proceed to the issues Counsel has identified.

In the **Anders** brief, Counsel identifies the following issues for our review:

1. Did the orphans' court commit an abuse of discretion or error of law when it concluded that CYS established grounds for termination pursuant to 23 Pa.C.S.A. § 2511(a)(5) and (8)?

2. Did the orphans' court commit an abuse of discretion or error of law when it concluded that the termination of parental rights was appropriate and in the Children's best interest pursuant to 23 Pa.C.S.A. § 2511(b)?

**Anders** Brief at 4-5 (cleaned up).[5]

---

[5] In lieu of briefs, CYS, the GAL, and the Children's legal interest counsel jointly filed a letter with this Court stating that they support the decrees involuntarily terminating Mother's parental rights.

Our standard of review in termination proceedings is well-settled:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the [orphans'] court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law. That is, if the factual findings are supported, we must determine whether the [orphans'] court made an error of law or abused its discretion. An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will. Thus, absent an abuse of discretion, an error of law, or insufficient evidentiary support for the [orphans'] court's decision, the decree must stand. We have previously emphasized our deference to [orphans'] courts that often have first-hand observations of the parties spanning multiple hearings. However, we must employ a broad, comprehensive review of the record in order to determine whether the [orphans'] court's decision is supported by competent evidence.

*In re Adoption of C.M.*, 255 A.3d 343, 358-59 (Pa. 2021) (quotation marks, brackets, and citations omitted).

Termination of parental rights is governed by section 2511, which requires a bifurcated analysis. *See id*. at 359. "Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." *In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019). If the orphans' court determines the petitioner established grounds for termination under section 2511(a) by clear and

convincing evidence, then the court then must assess the petition under section 2511(b), which focuses on the child's needs and welfare. ***See In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quotation marks and citations omitted). This Court need only agree with the orphans' court's determination as to any one subsection of section 2511(a), in addition to section 2511(b), in order to affirm the termination of parental rights. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In this case and consistent with the argument as presented by Counsel, we review the underlying decrees pursuant to section 2511(a)(8) and (b), which provide as follows.[6]

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * * *
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and

---

[6] By analyzing only section 2511(a)(8), we draw no conclusions as to the validity of section 2511(a)(5), *i.e.*, the other subsection discussed by Counsel in his ***Anders*** submissions. ***See B.L.W.***, 843 A.2d at 384.

termination of parental rights would best serve the needs
and welfare of the child.

\* \* \* \*

**(b) Other considerations**.—The court in terminating the rights
of a parent shall give primary consideration to the developmental,
physical and emotional needs and welfare of the child. The rights
of a parent shall not be terminated solely on the basis of
environmental factors such as inadequate housing, furnishings,
income, clothing and medical care if found to be beyond the
control of the parent. With respect to any petition filed pursuant
to subsection (a)(1), (6) or (8), the court shall not consider any
efforts by the parent to remedy the conditions described therein
which are first initiated subsequent to the giving of notice of the
filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

The first issue raised in the **Anders** brief concerns the orphans' court's

termination ruling under section 2511(a)(8).  Pursuant to section 2511(a)(8),

the petitioner must prove that (1) the child has been removed from parental

care for 12 months or more; (2) the conditions which led to the removal or

placement of the child continue to exist; and (3) termination of parental rights

would best serve the needs and welfare of the child.  This Court has explained:

Unlike other subsections, § 2511(a)(8) does not require the
court to evaluate a parent's willingness or ability to remedy the
conditions that led to the placement of the children.   [T]he
relevant inquiry regarding the second prong of § 2511(a)(8) is
whether the conditions that led to removal have been remedied
and thus whether reunification of parent and child is imminent at
the time of the hearing.  Further, the Adoption Act prohibits the
court from considering, as part of the § 2511(a)(8) analysis, any
efforts by the parent to remedy the conditions described [in the
petition] which are first initiated subsequent to the giving of notice
of the filing of the petition.

- 11 -

Although § 2511(a) generally focuses on the behavior of the parent, the third prong of § 2511(a)(8) specifically accounts for the needs of the child. This Court has recognized that the application of [§ 2511(a)(8)] may seem harsh when the parent has begun to make progress toward resolving the problems that had led to the removal of her children.

> However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit [eighteen] months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

*In re M.E.*, 283 A.3d 820, 832 (Pa. Super. 2022) (citations and quotation marks omitted).

With respect to the orphans' court's determination under section 2511(a)(8), Counsel concluded that an appeal of this determination is frivolous due to the introduction of sufficient testimony and evidence establishing the amount of time that the Children have been in placement, the timeline regarding Mother's participation in services, and the testimony regarding Mother's limited contact with the Children during the period of CYS's custody.

In its opinion, the orphans' court explained the basis for its determination that Mother's parental rights to the Children should be terminated under section 2511(a)(8) as follows:

- 12 -

With regard to Mother, the identified concerns at the beginning of the case were untreated mental health issues and substance abuse. As of the date of the termination hearing, [CYS was] unaware of Mother's participation in services during the last 16 months. [CYS had] no information indicating that Mother ha[d] participated in drug and alcohol treatment and she ha[d] refused drug testing. Additionally, [CYS was] unaware if Mother completed parenting services and Mother refused in-home services from Justice Works Youth Care.

With regard to housing, [CYS was] unaware of Mother's current housing situation, however, [CYS] provided testimony that Mother's prior residence has been condemned. With regard to visitation with S[.B.,] Mother availed herself to 7 out of a possible 136 visits, and the last in-person visit took place in April of 2023. [With regard to visitation with C.B., Mother availed herself of 34 out of a possible 136 visits. Mother has not had in person or phone contact with C.B. since March of 2023. With regard to visitation with S.S., Mother availed herself of 36 out of a possible 136 visits. Mother has not had an in-person visit or phone contact with S.S. since November of 2022.] Finally, the court does not have the benefit of a bonding assessment between Mother and [Children,] as Mother canceled the scheduled appointment and never rescheduled.

Orphans' Court Opinion (*In re. S.B.*), 3/6/24, at 11 (unnecessary capitalization omitted); *see also* Orphans' Court Opinion (*In re. S.S.*), 3/6/24, at 13-14; Orphans' Court Opinion (*In re. C.B.*), 3/6/24, at 11.

Based on our review, we conclude that the orphans' court's termination ruling as to section 2511(a)(8) is supported by competent evidence of record. In concluding that CYS satisfied section 2511(a)(8), the orphans' court stated that "it is clear that it has been [twelve] months or more since the removal of the [C]hildren. The [C]hildren were removed in July of 2021, therefore, more than [thirty-one] months have elapsed from the date of removal until the present time." Orphans' Court Opinion (*In re. S.B.*), 3/6/24, at 13-14; *see*

*also* Orphans' Court Opinion (*In re. S.S.*), 3/6/24, at 16; Orphans' Court Opinion (*In re. C.B.*), 3/6/24, at 13-14.  The orphans' court further concluded that Mother: refused to participate in services beginning in November 2022; failed to make progress, and largely did not attempt to make progress; through her words and deeds, made it clear that she has no intention of addressing the conditions that led to the removal of the Children; lacks empathy for the Children; was inconsistent with her visitations with the Children; failed to attend a bonding assessment with Dr. Menta; and the conditions which existed at the time of removal are much worse.  *See* Orphans' Court Opinion (*In re. S.B.*), 3/6/24, at 14; *see also* Orphans' Court Opinion (*In re. S.S.*), 3/6/24, at 16-17; Orphans' Court Opinion (*In re. C.B.*), 3/6/24, at 14.  Finally, the orphans' court determined that termination of Mother's parental rights would best serve the needs and welfare of the Children.[7]  *See* Orphans' Court Opinion (*In re. S.B.*), 3/6/24, at 15-16; *see also* Orphans' Court Opinion (*In re. S.S.*), 3/6/24, at 18-19; Orphans' Court Opinion (*In re. C.B.*), 3/6/24, at 15-16.

_____

[7] We note that the orphans' court improperly analyzed this prong together with section 2511(b).  *See C.L.G.*, 956 A.2d at 1009 (holding that "while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the 'needs and welfare of the child,' we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the 'needs and welfare' of [the child], as proscribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b)").  Despite the orphans' court's oversight on this point, we nevertheless determine that CYS satisfied its evidentiary burden.

In reviewing these findings, the certified record is clear that Mother has not remedied the conditions that led to the Children's placement. Specifically, Mother ceased her mental health care and failed to address her substance abuse issues. *See* N.T., 2/27/24, at 38-40. Although Mother complied with services for approximately fifteen months following the Children's adjudication, in November 2022, Mother's progress declined significantly. Primarily, Mother failed to complete a bonding assessment with Dr. Menta. *See id*. at 22. Mother scheduled the assessment but then failed to appear. *See id*. While Dr. Menta attempted to contact her to reschedule, Mother never followed up. *See id*. at 27.

Similarly, Ms. Hanig testified that in November 2022, Mother stopped signing releases for her mental health services provider, Clarion Family Therapy, which resulted in CYS not being able to confirm her treatment progress and her compliance with treatment recommendations. *See id*. at 38. Ms. Hanig further testified, on direct examination, that Mother failed to maintain compliance with her drug and alcohol requirements, as follows:

> Q: For approximately [fifteen] months after the [C]hildren were adjudicated dependent, [] Mother was in compliance with the recommended services, but you're saying for about the last year and a half [CYS] has not received any information regarding the services [] Mother has been ordered to participate in?
>
> A: That's correct, for mental health treatment. In terms of drug and alcohol treatment, that was not initially court ordered as she had stated she was clean and there were no positive drug screens. However, she has significant history of drug and alcohol use. She was asked to [submit to a] drug screen by Justice Works in

January of 2023. She refused [the screen] and stated that she had been using prescriptions that were not prescribed to her.

Q: Did [CYS] ask for additional drug and alcohol services following that refusal?

A: Yes.

Q: Is [CYS] aware as we're here today whether or not [] Mother has participated in any drug or alcohol treatment?

A: She has not to [CYS's] knowledge and [since] that time [she has] refused to participate in any kind of treatment.

Q: Since that time has [CYS] been able to perform a test in order to determine whether or not [] Mother is using illegal substances?

A: No. [CYS] had made a referral for Justice Works Youth Care Services to work with her . . . . However, she refused Justice Works to come into the home. She also -- the last time [CYS] had attempted to go to her home . . . the home had been marked as condemned and [Mother had] not provided [CYS] with an updated address.

*Id*. at 38-40. Finally, in September 2023, Ms. Hanig reported that CYS learned Mother's home had been condemned. *See id*. at 40. Ms. Hanig testified that since that time, CYS was unaware of Mother's current residence. *See id*.

Turning to the final prong of section 2511(a)(8), Ms. Hanig testified that the Children are thriving in their respective placements. *See id*. at 51-61. Specifically, at the time of the termination hearing, S.B., then seventeen years old, was residing at Alternative Living Solutions, where she was learning how to live independently. *See id*. at 52-53. Ms. Hanig also reported that S.B. was receiving mental health services. *See id*. at 52. Ms. Hanig informed the court that S.B. wants Mother's rights to be terminated. *See id*. at 53.

C.B., who was fourteen years old at the time of the termination proceeding, began living in a pre-adoptive foster home in March 2023 and remained there through the February 2024 hearing. *See id*. at 54. Ms. Hanig testified that C.B. had previously resided at a residential treatment facility for significant mental health issues but had made such progress that she no longer required any services. *See id*.

Ms. Hanig further testified that following the voluntary placement agreement executed in June 2021, S.S., then four years old, was placed in a pre-adoptive home where she remained through the termination proceeding. *See id.* at 57. Ms. Hanig reported that S.S. was diagnosed with reactive attachment disorder, oppositional defiant disorder, post-traumatic stress disorder, selective mutism, and epilepsy. *See id*. at 58. Therefore, S.S. participated in psychiatric services, trauma therapy, and family-based therapy. *See id*. at 58. However, due to her vast improvement, these services were no longer required at the time of the termination hearing. *See id*.

Based on the foregoing, the orphans' court was well within its discretion to terminate Mother's parental rights under section 2511(a)(8) because the Children had been removed from her care in excess of the twelve-month statutory minimum, the conditions which led to the Children's removal continued to exist, and termination would best serve the needs and welfare of the Children. Thus, first issue raised in the ***Anders*** brief is frivolous.

The second issue raised in the **Anders** brief concerns the orphans' court's ruling regarding section 2511(b). If there are sufficient grounds for termination pursuant to section 2511(a), the court turns to section 2511(b), which requires the court to "give primary consideration to the developmental, physical and emotional needs and welfare of the child" when considering whether to involuntarily terminate parental rights. 23 Pa.C.S.A. § 2511(b). Our Supreme Court in **In re E.M.**, 620 A.2d 481 (Pa. 1993), first recognized that the "emotional needs and welfare" analysis under section 2511(b) should include, in part, the child's bond with his or her parent. The Court later articulated that the effect on the child of severing a bond with a parent requires "a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." **In the Interest of K.T.**, 296 A.3d 1085, 1109 (Pa. 2023). The **K.T.** Court explained:

> Severance of a "necessary and beneficial" bond would predictably cause more than the "adverse" impact that, unfortunately, may occur whenever a bond is present. By contrast, severance of a necessary and beneficial relationship is the kind of loss that would predictably cause "extreme emotional consequences" or significant, irreparable harm. **See E.M.**, 620 A.2d at 484 ("a beneficial bonding could exist between a parent and child, such that, if the bond were broken, the child could suffer extreme emotional consequences").

**K.T.**, 296 A.3d at 1109-10 (some citations omitted). As such, the **K.T.** Court distinguished "extreme emotional consequences" from an "adverse impact" to the child when parental rights are terminated. **Id**. at 1111. Moreover, the

- 18 -

Court cautioned that a trial court "must not truncate its analysis and preclude severance based solely on evidence of an 'adverse' or 'detrimental' impact to the child." *Id*. at 1114. As such, the Court concluded, "to grant termination when a parental bond exists, there must be clear and convincing evidence that the bond is not necessary and beneficial." *Id*.

Furthermore, the *K.T.* Court reaffirmed that caselaw "indicates that bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." *K.T.*, 296 A.3d at 1109. For instance, if relevant in a case, a trial court "can equally emphasize the safety needs of the child" in its analysis under Section 2511(b). *See In re M.M.*, 106 A.3d 114, 118 (Pa. Super. 2014).

Additionally, this Court has recognized that,

> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and its mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted).

Counsel reasoned that Mother's appeals from the termination decrees on the basis of the orphans' court's rulings with respect to section 2511(b) were frivolous, noting that the testimony presented established that termination is in the Children's best interest, the Children deserve permanency, and the Children desire to have Mother's rights terminated.

With respect to section 2511(b), the orphans' court concluded that: Mother has not provided love, comfort, security, or stability to the Children; there is no evidence of a parent-child bond; and termination of Mother's parental rights would best serve the developmental, physical, and emotional needs and welfare of the Children. *See* Orphans' Court Opinion (*In re. S.B.*), 3/6/24, at 15-16; *see also* Orphans' Court Opinion (*In re. S.S.*), 3/6/24, at 18-19; Orphans' Court Opinion (*In re. C.B.*), 3/6/24, at 15-16.

Based on our review, we conclude that the orphans' court's determination as to subsection 2511(b) is supported by the record. Mother did not avail herself of the bonding assessment required by the orphans' court. In addition, Mother missed the vast majority of her scheduled supervised visits with the Children. Mother had not seen any of the Children since April 2023 and had not seen S.S. since November 2022. *See* N.T., 2/27/24, at 24. Mother's lack of visitation is particularly egregious considering that CYS informed her that they could provide her with transportation for the visits.

*See id*. at 42. In addition, Mother failed to appear for the termination hearing despite the court continuing the matter and CYS providing her transportation. Accordingly, as aptly determined by the orphans' court, the record contains no evidence of a parent-child bond between the Children and Mother. Based on the foregoing, we discern no abuse of discretion or error of law in the orphans' court's conclusion that termination best serves the Children's developmental, physical, and emotional needs and welfare pursuant to section 2511(b).

Finally, we note that our independent review of the record has disclosed no non-frivolous issues that Counsel, intentionally or not, missed or misstated. *See J.D.H.*, 171 A.3d at 908. Therefore, we grant Counsel's motion to withdraw from representation and affirm the decrees terminating Mother's parental rights to the Children pursuant to section 2511(a)(8) and (b).

Motion to withdraw granted. Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

**DATE: 11/19/2024**